UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RAY EARNEST FOX,

                    Plaintiff,

v.

UNKNOWN HEEKE, et al.,

                    Defendants.

_____/

Case No. 1:24-cv-61

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff will be granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.18.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants.  However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

against Defendants Miracles, Haug, Olsen, Henry, Richardson, Palmer, Blair, Picono, Stevenson, Unknown Parties #1 and #2, Ward, Rewerts, Smith, Wits, Hawkins, Garcia, and London. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Heeke, Milrowski, and Gailes: Plaintiff's Fourteenth and Fifth Amendment procedural due process claims, his equal protection claims, his conspiracy claims, and his Eighth Amendment claims. Plaintiff's retaliation and state law claims against Defendants Heeke, Milrowski, and Gailes, and his substantive due process claim against Defendant Gailes remain in the case.

**Discussion**

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers Unknown Heeke, Unknown Haug, Unknown Olsen, Unknown Henry, Unknown Richardson, Unknown Milrowski, Unknown Party #1, and Unknown Gailes. Plaintiff also sues Sergeants Unknown Miracles, Unknown Palmer, and Unknown Picono; Resident Unit Managers Unknown Blair and Unknown Stevenson; Corrections Supervisor Unknown Party #2; Prisoner Counselor and Security Classification Committee (SCC) Mentor Unknown Ward; Warden Randee Rewerts; Deputy Warden Unknown Garcia; Grievance Coordinator Unknown London; Hearings Investigators Unknown Smith and

Unknown Wits; and Hearing Officer Unknown Hawkins.  Plaintiff sues Defendants in their individual and official capacities.  (ECF No. 1, PageID.2–4.)

Plaintiff alleges that on June 19, 2023, he pleaded guilty to possession of methamphetamine and was sentenced to the MDOC with a referral for substance abuse therapy.  (*Id.*, PageID.5.)  Plaintiff was housed in level 1 housing at DRF, which was an open area separated into 8-man cubes.  Plaintiff states that there was no separation between the individuals in each cube, or the other one-hundred and sixty inmates in the unit.  (*Id.*, PageID.6.)

Plaintiff states that during his first forty-five days in prison, his cousin Isaac sent him gifts in the form of secure-packs.  This prompted one of Plaintiff's cellmates to begin harassing him for money to buy drugs.  Plaintiff was smaller, younger, and inexperienced in the prison lifestyle and began buying drugs to share with his cellmate.  When Plaintiff's financial gifts slowed down, his cellmate became aggressive and on November 19, 2023, he attacked Plaintiff after being told that Plaintiff expected to receive money because of his mother's death.  As a result of the attack, Plaintiff suffered "a busted lip, swollen eye, and a bloody face."  (*Id.*)  Plaintiff was found by officers under the bed trying to avoid being punched by his larger cellmate.  (*Id.*)

Plaintiff was placed in segregation and was found guilty of fighting following a hearing on November 30, 2023.  Plaintiff was subsequently reclassified to level 2.  (*Id.*)  Plaintiff asserts that he should not have been found guilty of fighting as he was discovered hiding under the bed with a bloody face, which does not meet the definition

of fighting set forth in MDOC Policy Directive 03.03.105.  (*Id.*, PageID.8.)  Plaintiff asserts that Defendant Unknown Party #1 was the reporting officer, and Defendant Unknown Party #1 failed to properly determine Plaintiff's role as victim, rather than participant in a fight.  Plaintiff also asserts that Defendant Smith failed to properly investigate the charge and that Defendant Unknown Party #2 failed to properly review Plaintiff on the charge of fighting.  (*Id.*, PageID.8–9.)

Plaintiff alleges that Defendants Rewerts, Stevens, Blair, Garcia, and Ward were SCC members and that they improperly classified him to level 2 following his conviction for fighting without giving him a separate hearing.  (*Id.*, PageID.9.)  Plaintiff states that his attacker was returned to level 1 after Plaintiff refused to press criminal charges against him because Plaintiff was afraid of being labeled a "snitch."  (*Id.*)

On November 26, 2023, after arriving in the 900 Unit, Defendant Heeke gave Plaintiff his door card and said, "Here you go retard, make sure you use the tape on my desk to put your door card on the window of your cell."  (*Id.*)  Plaintiff replied, "Please don't call me retard, my name is Prisoner Fox, I'm not one of these inmates you can call out of [their] name, respect me and I'll respect you."  (*Id.*)  Defendant Heek responded, "Shut up and go to your f**king room."  (*Id.*, PageID.10 (asterisks added).)

On November 27, 2023, Plaintiff spoke to Defendant Miracles and complained that Defendant Heeke was harassing him and threatening to write enough tickets to keep Plaintiff in segregation.  Defendant Miracles told Plaintiff that Defendant

Heeke spoke to all the prisoners that way and to just keep his mouth shut and his head down and he would be ok.  (*Id.*)

On November 29, 2023, Plaintiff was called out by Defendant Miracles to be reviewed for a disobeying a direct order misconduct written by Defendant Heeke, which stated that Plaintiff had taken a shower during a time that was not allowable for prisoners on non-bond status to shower.  Plaintiff asserts that at this point, he had not received a rule book and did not know he was violating a rule.  When Plaintiff explained this to Defendants Miracles and Heeke, Defendant Heeke stated, "Welcome to [my] world, this is what [we] do to little punks go crying to the sergeant."  (*Id.* (grammar in original retained).)  Defendant Miracles found Plaintiff guilty of the falsified charge even though Defendant Heeke admitted retaliatory intent in Defendant Miracles' presence.

"For the next 10 days, Plaintiff received a string of retaliatory misconducts," four of them with the same description were typed up or written by Defendants Heeke, Haug, and Olsen and signed by the reporting officers on December 1, 2023. Plaintiff states that the charge for each was insolence even though the reports claimed that Plaintiff had disobeyed a direct order.  Plaintiff contends that Defendants Heeke, Haug, Olsen, Richardson, and Miracles all conspired to give Plaintiff as many misconducts as possible to raise his security level.  (*Id.*)  Plaintiff was found guilty of the misconduct tickets by Resident Unit Manager "Stevens."[2]  (*Id.*)

---

[2] Although it is not clear, the Court assumes that Plaintiff is referring to Defendant Stevenson.

On December 3, 2023, Defendant Richardson told Plaintiff that while Defendant Heeke was on vacation he was in charge of the unit and that Plaintiff did not have "shit coming, no bathroom breaks, no showers or water for you." *Id.*)  On December 4, 2023, Plaintiff was reviewed on a misconduct for interference with the administration of rules by Defendant Palmer, which Plaintiff received because he had attempted to go to the shower during a time not allowable for prisoners on non-bond status.  Plaintiff states that he had still not received a copy of the rules at the time he received the ticket.  (*Id.*)

On December 6, 2023, at 1:15 p.m., Defendant Henry wrote a false misconduct on Plaintiff for being out of place at 6:25 p.m.  (*Id.*)  Defendant Miracles reviewed Plaintiff on the ticket, and he was found guilty by Defendant Blair. Plaintiff received ten days of sanctions.  (*Id.*, PageID.10–11.)  On December 7, 2023, Defendant Heeke wrote Plaintiff a false ticket for insolence, saying that Plaintiff "said 'duh, duh' to her indicating that his heart [was] still beating."  (*Id.*, PageID.11.)  Plaintiff was found guilty of the misconduct by Defendant Picono,[3] who said "you can't win."  (*Id.*) Plaintiff received eight days of sanctions.  (*Id.*)  Defendants Heeke and Olsen also "fabricated a misconduct" accusing Plaintiff of interference with the administration of rules, and Defendant Picono again told Plaintiff that he could not win.  (*Id.*)

On the same day, Plaintiff requested permission to use the store machine, which is located in the recreation room to place his order.  Defendant Heeke gave permission, so Plaintiff put on his shoes and headed toward the recreation room.

---

[3] Plaintiff refers to this party as "Pinecone" in the body of his complaint.

Defendant Heeke then whispered to Defendant Milrowski who stated, "Go press your f**king bunk, Heeke says you don't have shit coming retard." (*Id.* (asterisks added).) Plaintiff began to argue that Defendant Heeke had just given him permission to place his order, but he nonetheless began to return to his cell. Twenty minutes later, three unknown officers arrived and arrested Plaintiff, placing him in a level 4 unit without any SCC review. (*Id.*)

Once Plaintiff was placed in the cell in handcuffs, he noticed that the bulletin board was burned and charred black, the screen on the window was ripped open, the mattresses were ripped open, the electric socket was charred black and stuffed with metal objects, the toilet continued to fill from other prisoners' waste whenever they flushed their toilets, the emergency button was ripped off and there were several marks on the wall from metal objects being sharpened. (*Id.*)

Approximately fourteen hours later, at ten o'clock a.m. on December 8, 2023, Plaintiff was ordered to go to the dayroom for a cell shakedown, which was the third in the last twenty-four hours. (*Id.*, PageID.12.) Plaintiff complied with the order and proceeded to the 1200 Unit dayroom, where he was placed in handcuffs. Plaintiff later received a misconduct for possession of dangerous contraband. (*Id.*) The reporting officer, Defendant Gailes, claimed to have found a piece of steel that was approximately four inches long and one inch wide under the mattress on the top bunk, which is where Plaintiff slept. Plaintiff states that the cell had been searched the night before and no weapon had been reported. (*Id.*) Plaintiff asserts that Defendant Gailes placed the incorrect charge on the misconduct report and that he had been

9

denied a cell inventory form prior to moving into the cell, both of which violated his due process rights. (*Id.*, PageID.12–13.) Plaintiff asserts that while being transferred to segregation, Defendant Gailes said, "My friend Heeke told me to ask if you learned your lesson retard?" (*Id.*, PageID.13.)

On December 19, 2023, Plaintiff was found guilty of possession of a weapon and the piece of steel was turned over to the Michigan State Police. (*Id.*) On December 21, 2023, Plaintiff received a security reclassification form stating that he had been recently reclassified to a level 2 but was being held in a level 4 housing unit with a level 5 prisoner. (*Id.*) Plaintiff states that he never received any reclassification hearing prior to being reclassified. (*Id.*)

Plaintiff states that when he was initially placed in the 1200 housing unit on December 7, 2023, Defendant Gailes threw his state property away, depriving him of hygiene items. Plaintiff states that for the next four weeks, he had to borrow state issue clothes and hygiene items from other inmates. (*Id.*, PageID.14.) Plaintiff also asserts that he was held on Double 00 status for 30-days longer than the allowable time for a prisoner who quits a job. (*Id.*)

Plaintiff contends that Defendants retaliated against him in violation of the First Amendment, violated his due process and equal protection rights under the Fifth and Fourteenth Amendments, and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff also contends that Defendants violated his rights under state law. Further, the Court construes

Plaintiff's complaint to raise a § 1983 civil conspiracy claim.   Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Fourteenth Amendment

#### 1.    Due Process Clause

##### a.    Procedural Due Process

Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause in relation to his many misconduct convictions.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  Plaintiff challenges misconducts for disobeying a direct order, insolence, interference with the administration of rules, and being out of place, which are Class II, or minor, misconducts. *Id.*, Attachment B.

12

Plaintiff also appears to be asserting a violation of due process in relation to his misconducts for fighting and possession of dangerous contraband, which are Class I, or major, misconducts. *Id.*, Attachment A.

The policy provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See id.* ¶ DDDD and Attachment D. Therefore, Plaintiff should not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

Plaintiff's two major misconduct charges and convictions may have affected a number of his interests. However, none of those interests fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate

"disciplinary time" for a major misconduct conviction.[4]  *See* Mich. Comp. Laws § 800.34.  Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole.  *Id.* § 800.34(2).  It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination."  *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation."  Plaintiff notes that he was placed in segregation following each major misconduct charge but fails to allege specific facts regarding the duration of his placement in segregation.  Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances."  *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship."  *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).  Plaintiff fails to allege any facts showing that his confinement in administrative segregation was atypical or significant.

Plaintiff states that he was reclassified to Level 2 following his first major misconduct for fighting without receiving a separate hearing and that following his

---

[4] Plaintiff is currently serving sentences for crimes committed on January 11, 2022, and August 7, 2023.  *See* MDOC Offender Tracking System, http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=425694.

second major misconduct conviction for possession of dangerous contraband he was being held in a level 4 housing unit with a level 5 prisoner. To the extent that Plaintiff is claiming this violates his due process rights, this claim lacks merit. The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Prisoners cannot "have a protected liberty interest in the procedure[s] affecting [their] classification and security, because the resulting restraint, without more, [does] not impose and 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Cash v. Reno*, No. 97-5220 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997); *see also Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998); *Moore v. Sally*, No. 97-4384, 1999 WL 96725, at *1 (6th Cir. Feb. 3, 1999). Without such a protectible interest, Plaintiff cannot successfully claim he has been denied due process, because "process is not an end in itself." *Olim*, 461 U.S. at 250.

Plaintiff also asserts that he was placed on "Double 00" status for twice as long as was allowable under MDOC policy. Double 00 status prevents a prisoner from being able to get a prison job and restricts their ability to participate in leisure time and religious activities. *Brown v. Cioffi*, No. 1:23-cv-987, 2024 WL 20265, at *8 (W.D. Mich. Jan. 2, 2024). The Court notes that federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See,*

*e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (holding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)).  Consequently, Plaintiff's Double 00 status as unemployable did not trigger a right to due process.

Additionally, Plaintiff claims that Defendant London violated his due process rights when she denied his grievances "for falsified or arbitrary reasons."  (ECF No. 1, PageID.15.)  Plaintiff has no due process right to file a prison grievance.  The courts

repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant London's conduct did not deprive him of due process.

Finally, Plaintiff claims that on December 7, 2023, Defendant Gailes threw his state property away in violation of his due process rights.  Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517,

530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Therefore, Plaintiff's due process claim against Defendant Gailes for the loss of his state properly will be dismissed.

Accordingly, for all of the reason set forth above, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed.

### b.    Substantive Due Process

Plaintiff appears to imply that Defendant Gailes planted a weapon in his cell in order to have Plaintiff convicted of a false major misconduct for possession of dangerous contraband.    Plaintiff may be asserting Fourteenth Amendment substantive due process claim in relation to this conduct.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."  *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power."  *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X*, 175 F.3d at 378. The Sixth Circuit has also noted, in the context of evaluating a claim of qualified immunity, that "the distinction between attempting to frame an inmate for a

misconduct charge by planting evidence on his person and attempting to frame an inmate by giving false testimony is one without a difference." *See Scott v. Churchill*, 377 F.3d 565, 571 (6th Cir. 2004).  As noted above, Plaintiff alleges that Defendant Gailes discovered a weapon in his cell that was not there when Plaintiff went into the cell the previous night and that Plaintiff received a class I misconduct for possession of dangerous contraband.  Plaintiff states that he was found guilty of the misconduct. Although somewhat conclusory, Plaintiff's Fourteenth Amendment substantive due process claim against Defendant Gailes may not be dismissed on initial review.

### 2.    Equal Protection Clause

Plaintiff makes a conclusory assertion that Defendants violated his right to equal protection.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all

relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff's only allegation that suggests that he was treated differently than others is his allegation that Plaintiff's attacker returned to level 1 whereas Plaintiff was classified to level 2 following his conviction for fighting. (ECF No. 1, PageID.) Although this allegation suggests that Plaintiff was treated differently than another, Plaintiff fails to allege that the other prisoner was similarly situated in all relevant respects. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Plaintiff in this case fails to allege facts showing that he was treated differently from any other similarly situated individual. Therefore, he fails to state an equal protection claim.

### B. Fifth Amendment

Plaintiff also asserts that Defendants violated his rights under the Fifth Amendment. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment, however, only applies to alleged deprivations by federal

21

actors, not to private or state actors. *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000).

The Fourteenth Amendment, rather than the Fifth Amendment, "restricts the activities of the states and their instrumentalities." *Id.* When a complaint cites both the Fifth Amendment and the Fourteenth Amendment in an attempt to redress alleged due process violations by state actors, the invocation of the Fifth Amendment is a "nullity" and is "redundant" of the invocation of the Fourteenth Amendment. *Id.* Plaintiff's complaint does exactly that. Therefore, the Court will dismiss his Fifth Amendment claims.

### C. Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison

officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff alleges that Defendants Heeke, Gailes, and Milrowski harassed him and called him a "retard." The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth

Amendment claim against Defendants Heeke, Gailes, and Milrowski arising from their alleged verbal abuse.

Plaintiff also asserts that certain conditions of his confinement violated his Eighth Amendment rights.  Specifically, Plaintiff states that on December 7, 2023, following the out of place misconduct by Defendant Milrowski, he was placed in a cell where the bulletin board was burned and charred black, the screen on the window was ripped open, the mattresses were ripped open, the electric socket was charred black and stuffed with medal objects, the toilet continued to fill from other prisoners' waste whenever they flushed their toilets, the emergency button was ripped off, and there were several marks on the wall from medal objects being sharpened.  (ECF No. 1, PageID.11.)

The Court does not minimize Plaintiff's experience; however, Plaintiff's allegations about the conditions in that cell describe relatively minor and temporary inconveniences.  *See Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while *substantial* deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration" (emphasis in original) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).  Plaintiff was in the cell for one night before contraband was discovered, and then he was transferred to segregation.  (ECF No. 1, PageID.13.)  The cell conditions that Plaintiff describes show that the cell may have been dirty, but not

filthy, as described in *Taylor v. Riojas*, 141 S. Ct. 52 (2020), where feces covered the walls and floors and were packed into the water faucet.  Plaintiff also does not allege that he was denied cleaning materials during this period.  Consequently, Plaintiff's allegations about the cell in 1200 unit fall well short of meeting the objective component of the Eighth Amendment standard.

Plaintiff also asserts that on December 7, 2023, Defendant Gailes threw his state property away, depriving him of hygiene items.  Plaintiff states that for the next four weeks, he had to borrow state issue clothes and hygiene items from other inmates.  (ECF No. 1, PageID.14.)  The Sixth Circuit has recognized that the complete denial of a toothbrush or toothpaste for an extended period may constitute an objectively serious deprivation of basic hygiene needs.  *See Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).  However, a short-term denial of a toothbrush or toothpaste falls short of constituting such a deprivation.  *See, e.g.*, *Matthews v. Murphy,* No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (denial of toothbrush and toothpaste for 34 days constitutes a mere temporary inconvenience); *Robertson v. McCray,* No. 03-22823-CIV, 2006 WL 2882502, at *7

(S.D. Fla. July 28, 2006) (failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment); *Fernandez v. Armstrong,* No. 3:02CV2252CFD, 2005 WL 733664, at *5–6 (D. Conn. Mar. 30, 2005) (the denial of toothpaste, toothbrush, shampoo and soap for 16 days did not rise to the level of an Eighth Amendment violation where plaintiff did not allege any physical effects or injuries); *Holder v. Merline,* No. Civ. A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted). Moreover, here, unlike in *Flanory*, Plaintiff alleges no harm or risk of harm arising from his four-week deprivation. *See Flanory*, 604 F.3d at 254 (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (recognizing that a 49-day deprivation of soap, toothbrush and toothpaste may impair basic levels of sanitation and hygiene only if prisoner health and safety is jeopardized); *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay).

Moreover, with regard to Plaintiff's claim that he was denied a change of clothing during this time, the Court notes:

> The denial of laundry facilities or clean clothes may also constitute an Eighth Amendment violation, but only when the inmate claims to have "suffered a physical injury or a disease as a result of these conditions." *Miller v. Brown,* 2007 WL 1876506, *8 (D.N.J. June 26, 2007).

> Generally, it is the case that, at least for purposes of a money damages claim, in order for any prison condition to be actionable under the Eighth Amendment, an inmate must show that he or she has been actually harmed by the condition in question. *See, e.g., Benjamin v. Fraser,* 343 F.3d 35, 51 n. 17 (2d Cir.2003) ("To establish the deprivation of a basic human need such as reasonable safety, an inmate must show 'actual or imminent harm,' " *quoting Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, an inmate who does not claim to have suffered "a severe or prolonged lack of sanitation constituting an infliction of pain within the meaning of the Eighth Amendment" has no claim for damages based on allegedly unsanitary clothing or living conditions. *See Washington v. Perry,* 2009 WL 2579214, *4 (W.D.Wash. Aug.19, 2009). Merely being exposed to conditions which create a risk of harm is no basis for an award of damages unless the harm actually occurs. *Molina v. Smearsal,* 2011 WL 127158 (N.D. Ohio Jan.14, 2011).

*Brown v. Timmerman-Cooper*, No. 2:10-CV-283, 2013 WL 430262, at *2 (S.D. Ohio Feb. 4, 2013), *report and recommendation adopted*, No. 2:10-CV-283, 2013 WL 1344857 (S.D. Ohio Apr. 2, 2013).  Plaintiff in this case fails to allege that he suffered any injuries as a result of the four-week denial of a change of clothing or hygiene items.  Nor does Plaintiff allege facts showing that the named Defendants were responsible for or even aware of the fact that he was without hygiene items for the four-week period.  Under these authorities, Plaintiff's Eighth Amendment claims concerning the denial of state property for a four-week period fails to meet the objective component of the Eighth Amendment.

## D.    First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an

adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Initially, the Court notes that an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben*, 887 F.3d at 265; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Here, Plaintiff claims that after he asked Defendant Heeke not to call him a "retard" and complained to Defendant Miracles about Defendant Heeke's harassment.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

In this case, Plaintiff claims to have been given numerous retaliatory misconduct tickets and to have been unfairly found guilty because of the desire to punish him for complaining. Plaintiff was subject to a loss of privileges as a result of the misconduct convictions. Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill*, 630 F3d at 474). The *Maben* court noted the contrary holding in *Ingram v. Jewell*, 94 F. App'x. 271, 273 (6th Cir. 2004) (citing *Thaddeus-X*, 175 F.3d at 396–97) (14 days' loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*.

Regarding causation, the Court notes that it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v.*

30

*Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to

> retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff alleges that during the hearing on the initial misconduct written by Defendant Heeke, he attempted to explain that he was not aware of the rule preventing him from showering during that time and Defendant Heeke stated, "Welcome to [my] world, this is what [we] do to little punks go crying to the sergeant." (ECF No. 1, PageID.10.)  The Court concludes that, on initial review, Plaintiff has alleged sufficient facts to show a retaliatory motive on the part of Defendant Heeke.

Plaintiff also asserts that the fact that Defendant Miracles found him guilty of the misconduct despite the fact that Defendant Heeke admitted to having a retaliatory motive during the hearing shows that Defendant Miracles also intended to retaliate against Plaintiff.  However, Plaintiff concedes that he had taken a shower during a time that was not permissible for prisoners on sanctions.  The fact that Defendant Miracles found Plaintiff guilty of conduct to which he admitted, even knowing that Defendant Heeke may have written the ticket with a retaliatory motive, does not necessarily mean that Defendant Miracles had the same motive.  Plaintiff merely alleges the ultimate fact of retaliation against Defendant Miracles.  Therefore, the Court will dismiss Plaintiff's retaliation claim against Defendants Miracles.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff claims that for the next ten days, he received a string of "retaliatory" misconducts, that four of them with the same description were typed up or written by Defendants Heeke, Haug, and Olsen and signed by the reporting officers all on December 1, 2023, and that the charge for each was insolence even though the reports claimed that Plaintiff had disobeyed a direct order. (ECF No. 1, PageID.10.)  Plaintiff fails to allege any specific facts regarding these misconducts, including whether he had engaged in the conduct for which he received the tickets.  Plaintiff also makes a conclusory assertion that Defendants Heeke, Haug, Olsen, Richardson, and Miracles "all conspired to give Plaintiff as many misconducts as possible to raise his security level," and that Defendant Stevenson found him guilty of the misconducts.  (*Id.*)  However, Plaintiff does not allege that these Defendants knew that Plaintiff had engaged in protected conduct before taking these alleged actions against Plaintiff.  Under these circumstances, the Court concludes that such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff alleges that on December 3, 2023, Defendant Richardson told him that he was in charge while Defendant Heeke was on vacation and that Plaintiff did not have "shit coming, no bathroom breaks, no showers or water for you."  (ECF No. 1, PageID.10.)  Although Plaintif alleges that Defendant Richardson made this verbal statement, Plaintiff does not allege that Defendant Richardson took any actual action against him.  Instead, Plaintiff states that on December 6, 2023, Defendant Henry, who was Defendant Richardson's partner, wrote Plaintiff a false misconduct for

unauthorized occupation of a cell and Plaintiff was found guilty by Defendant Blair. Plaintiff implies that Defendant Henry must have written the ticket in order to retaliate against Plaintiff based on the fact that he and Defendant Richardson were "partners." Such an assertion is entirely conclusory. Plaintiff fails to allege any facts showing that Defendant Henry knew that Plaintiff had engaged in any protected conduct and was motivated by a desire to retaliate against him, much less that Defendant Blair found him guilty of the misconduct because he wished to retaliate against Plaintiff. Therefore, his speculative allegations in that regard fail to state a claim.

Plaintiff claims that Defendant Heeke wrote false misconducts on Plaintiff on December 7, 2023, and that Defendant Picono found Plaintiff guilty of each, telling Plaintiff, "you can't win." (ECF No. 1, PageID.11.) Plaintiff states that Defendant Olsen was also involved in the writing of one of the misconduct tickets. As noted above, Plaintiff alleged facts in support of a retaliatory motive on the part of Defendant Heeke. However, Plaintiff's allegations against Defendants Picono and Olsen are largely conclusory and fail to show that they were motivated by a desire to retaliate against Plaintiff. He has not presented any facts to support his conclusion that Defendants Picono and Olsen retaliated against him for complaining about Defendant Heeke. Therefore, Plaintiff's retaliation claims against Defendants Picono and Olsen will be dismissed.

Plaintiff asserts that Defendant Milrowski retaliated against him when Defendant Heeke gave Plaintiff permission to use the store machine and then

whispered in Defendant Milrowski's ear, after which Defendant Milrowski immediately ordered Plaintiff to return to his bunk because "Heeke says you don't have shit coming retard." (ECF No. 1, PageID.11.) Plaintiff was subsequently arrested and placed in a level 4 unit. The Court concludes that Plaintiff's retaliation claim against Defendant Milrowski may not be dismissed on initial review.

Plaintiff claims that Defendant Gailes retaliated against him when he claimed to have found a piece of metal under Plaintiff's bunk and charged Plaintiff with possession of dangerous contraband. Plaintiff states that when he was being transferred to segregation, Defendant Gailes said, "My friend Heeke told me to ask if you learned your lesson retard?" (*Id.*, PageID.13.) The Court concludes that Plaintiff has alleged sufficient facts to state a retaliation claim against Defendant Gailes at this stage in the litigation.

Finally, Plaintiff appears to be claiming that Defendant London retaliated against him when she denied his grievances "for falsified or arbitrary reasons." (*Id.*, PageID.15.) However, Plaintiff fails to give any details about his grievances, nor does he allege facts showing that Defendant London's denial of his grievances was motivated by a desire to retaliate against him. Therefore, Plaintiff fails to state a retaliation claim against Defendant London.

35

### F.     Conspiracy

Plaintiff alleges that Defendants engaged in a conspiracy to retaliate against him.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy against Defendants Miracles, Haug, Olsen, Henry, Richardson, Palmer, Blair, Picono, Stevenson, Heeke, Milrowski, Gailes, Unknown Parties #1 and #2, Ward, Rewerts, Smith, and Garcia are conclusory and speculative.  His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers.  Plaintiff has provided no allegations establishing a link

36

between the alleged conspirators or any agreement between them.  The fact that some of the Defendants were aware of his grievances against another Defendant are insufficient to show that they conspired with one another to violate his rights.  He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.  In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy against these Defendants.

### G.    Defendants Wits and Hawkins

Plaintiff makes no allegations against Defendants Wits and Hawkins.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with

particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Wits, and Hawkins in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## H.    State Law Claims

Plaintiff also appears to be asserting that Defendants violated his state law rights. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457

U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Ordinarily where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."  (internal quotations omitted). Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff has failed to state valid federal claims against Defendants Miracles, Haug, Olsen, Henry, Richardson, Palmer, Blair, Picono, Stevenson, Unknown Parties #1 and #2, Ward, Rewerts, Smith, Wits, Hawkins, Garcia, and London, the Court will dismiss his state law claims against these Defendants.

However, because Plaintiff continues to have pending federal claims against Defendants Heeke, Milrowski, and Gailes, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims as to these Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Miracles, Haug, Olsen, Henry, Richardson, Palmer, Blair, Picono, Stevenson, Unknown Parties #1 and #2, Ward, Rewerts, Smith, Wits, Hawkins, Garcia, and London will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Heeke, Milrowski, and Gailes: Plaintiff's Fourteenth and Fifth Amendment procedural due process claims, his equal protection claims, his conspiracy claims, and his Eighth Amendment claims.  Plaintiff's retaliation and state law claims against Defendants Heeke, Milrowski, and Gailes, and his substantive due process claim against Defendant Gailes remain in the case.

An order consistent with this opinion will be entered.


Dated:  __April 18, 2024__              __/s/ Phillip J. Green__
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

40